UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TINA MARIE JOHNSON,<br><br>        Plaintiff,<br><br> v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,<br><br>        Defendant. | CASE NO. C17-5623-MAT<br><br>ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff Tina Marie Johnson proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is REVERSED and REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1967.[1] She has a GED, and previously worked as an

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 1

accountant and data entry operator. (AR 256.)

Plaintiff applied for DIB in November 2013. (AR 234-37.) That application was denied and Plaintiff timely requested a hearing. (AR 156-62, 164-73.)

On November 19, 2015, ALJ Marilyn Mauer held a hearing, taking testimony from Plaintiff and a vocational expert (VE). (AR 38-75.) On February 18, 2016, the ALJ issued a decision finding Plaintiff not disabled between March 14, 2012 (the day after entrance of Plaintiff's prior administratively final ALJ decision finding her not disabled) and September 3, 2014, but disabled as of September 4, 2014. (AR 31-48.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on June 13, 2017 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 33.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe Plaintiff's obstructive sleep apnea, degenerative disc disease of the lumbar and thoracic spine, status post cervical fusion, depressive disorder, and posttraumatic stress disorder. (AR 34-35.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR

35-36.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found that before September 4, 2014 (the onset of disability), Plaintiff had the RFC to perform sedentary work with additional limitations. She could lift 10 pounds occasionally and less than 10 pounds frequently. She could sit, stand, and walk for six hours each in an eight-hour workday, but required the option to alternate between sitting and standing every two hours. She could never climb ladders, ropes, or scaffolds. She could occasionally climb ramps and stairs. She could frequently balance. She could occasionally stoop, crouch, kneel, and crawl. She could occasionally reach overhead. She must avoid all exposure to hazards, such as unprotected heights and large, moving equipment. She could perform simple instructions in a setting that allows for variable concentration, attention, and pace throughout the day (i.e., she could "work in a setting with no strict production pace so long as adequate work is completed by the end of the workday or workweek"). (AR 36.) She could work in a setting with no public contact or teamwork assignments, and occasional co-worker and supervisory contact. (*Id*.) Beginning on September 4, 2014, she would have the same RFC as described above, but could only perform simple instructions for up to 2/3 of a workday, and would be off-task for the remainder of the day. (AR 44.) The ALJ found that since her alleged onset date, Plaintiff had been unable to perform any past work. (AR 45.)

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. The ALJ found that before September 4, 2014, Plaintiff could perform representative occupations such as surveillance

system monitor and document preparer. (AR 46.) Beginning on September 4, 2014, Plaintiff could not perform any jobs that exist in significant levels in the national economy. (AR 47.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in (1) discounting opinions written by examining providers, (2) discounting lay statements written by Plaintiff's mother, and (3) discounting her own testimony that she needed to recline during a workday and was unable to sustain concentration for two-hour increments.[2] The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

## Medical opinions

Plaintiff challenges the ALJ's assessment of two medical opinions, each of which the Court will address in turn.

Legal standards

In general, more weight should be given to the opinion of a treating physician than to a

---

[2] Plaintiff's opening brief also challenges the ALJ's RFC assessment and step-five findings, but this challenge is based entirely on the assignments of error enumerated above. Dkt. 14 at 17. Accordingly, these issues need not be analyzed separately.

non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751). Rather than merely stating her conclusions, the ALJ "must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

<u>Thomas L. Gritzka, M.D.</u>

Dr. Gritzka performed a physical examination of Plaintiff in December 2012, and his opinion report was submitted to the Appeals Council after a prior ALJ found Plaintiff not disabled. (AR 654-66.) The Appeals Council found that Dr. Gritzka's opinion and other submitted evidence did "not provide a basis for changing the [ALJ's] decision" and denied review. (AR 208.) In the current decision, the ALJ summarized Dr. Gritzka's findings and explained why she gave his opinion limited weight:

> Dr. Gritzka found the claimant had reduced range of motion throughout her spine and pain upon exam. It was the doctor's opinion the claimant "on a more probable than not basis" would be unable to engage on a sustained basis sedentary, light or medium work. The doctor also opined regarding the claimant's cardiovascular, pulmonary, and psychiatric condition, even though he admitted he was not a specialist in any of these areas. This evidence is given limited weight. It is noted that this report was submitted to the Appeals Council with review of the previous

> [ALJ] decision that denied the claimant benefits. The Appeals Council did not find it contained anything to merit remand, nor do I find any reason to give it any more weight than the Appeals Council. Dr. Gritzka is a forensic examiner selected by the claimant's attorney and is not a treating provider. He examined the claimant one time and it was over three years ago. There is nothing in Dr. Gritzka's report that is persuasive the claimant could not work within her [RFC] that considers her severe impairments.

(AR 38-39.)

Plaintiff argues that the ALJ erred in "assert[ing] the authority of the Appeals Council for the proposition in question[,]" namely a determination of the probative value of Dr. Gritzka's opinion. Dkt. 14 at 6. The Court agrees that this portion of the ALJ's reasoning does not provide a specific, legitimate basis for discounting Dr. Gritzka's opinion, because the Appeals Council did not indicate any specific reason that Dr. Gritzka's opinion failed to support reversing the prior ALJ's decision. The Appeals Council's denial of review does not amount to a specific reason to discount Dr. Gritzka's opinion.

The other reasons provided by the ALJ also fail. Although the ALJ correctly noted that Dr. Gritzka was an examining physician, rather than a treating physician, the ALJ did not rely on any treating opinions in formulating her RFC. (*See* AR 41 (ALJ's decision noting that the record contains no treating opinions regarding Plaintiff's functionality).) The ALJ then went on to emphasize that Dr. Gritzka was selected by Plaintiff's attorney, which suggests an improper focus on the purpose for which the opinion was obtained. *See Lester*, 81 F.3d at 830 ("The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them.").

While the ALJ negatively referenced Dr. Gritzka's opining as to the impact of Plaintiff's cardiovascular, pulmonary, and psychiatric conditions (AR 39), Dr. Gritzka emphasized that he did not specialize in those areas. The core of Dr. Gritzka's opinion was based on his detailed findings regarding Plaintiff's orthopedic condition, within his expertise as a board-certified

orthopedist. (AR 665-66.)

Dr. Gritzka's opinion references restrictions that are not accounted for in the ALJ's RFC assessment, which are arguably inconsistent with the jobs identified at step five. Because the ALJ failed to provide legally sufficient reasons to discount Dr. Gritzka's opinion, the ALJ must reconsider this opinion on remand.[3] The ALJ should also reconsider the impact of Dr. Gritzka's opinion on the findings at steps four and five, to the extent necessary.

Terilee Wingate, Ph.D.

Dr. Wingate performed a psychological examination of Plaintiff in March 2014, and completed a DSHS form opinion describing her symptoms and limitations. (AR 587-95.) Dr. Wingate also noted that Plaintiff reported such severe symptoms that she had either exaggerated her symptoms or had made a cry for help. (AR 588, 595.)

The ALJ discounted Dr. Wingate's opinion as inconsistent with Plaintiff's lack of mental health treatment for the majority of the adjudicated period, and found that the increased symptoms that Plaintiff described to Dr. Wingate following several deaths in her family constituted temporary exacerbations of symptoms that would not be expected to meet the 12-month durational requirement. (AR 40.) The ALJ also noted that Dr. Wingate did not review many records, and that the treatment record contains many normal mental status examinations. (*Id*.) Lastly, the ALJ found that Dr. Wingate's opinion depended heavily on Plaintiff's self-report, which was not entirely reliable. (*Id*.)

---

[3] Although Plaintiff requests a remand for a finding of disability, the Court finds that this remedy is inappropriate in light of the uncertainties in the record due to the interaction between the disputed medical opinions and the ALJ's assessment of Plaintiff's testimony and the lay statements, as discussed *infra*. Under these circumstances, the Court cannot find that further administrative proceedings would be useless. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015).

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 7

The Court finds that the ALJ's reasons to discount Dr. Wingate's opinion do not pass muster. That Plaintiff did not engage in mental health treatment during some of the adjudicated period does not bear on whether Dr. Wingate accurately described Plaintiff's symptoms and limitations. The ALJ also engaged in mere speculation regarding the impact of Plaintiff's grief at the loss of multiple family members: the ALJ simply assumed that the exacerbation of Plaintiff's symptoms due to grief would have subsided in less than 12 months, and yet found that Plaintiff's disability onset six months after Dr. Wingate's evaluation. (AR 40.) The ALJ's speculative assessment of the extent and duration of Plaintiff's grief is not a legitimate reason to discount Dr. Wingate's opinion.

Furthermore, the ALJ did not acknowledge the extent to which Dr. Wingate's mental status examination ("MSE") revealed abnormal findings; the existence of other normal findings does not negate Dr. Wingate's examination. Even if Dr. Wingate relied to some degree on Plaintiff's self-report in formulating her opinion, the MSE findings constitute objective evidence supporting Dr. Wingate's conclusions.

Thus, because the ALJ's reasons for discounting Dr. Wingate's opinion are not specific and legitimate, this opinion must be reconsidered on remand. Dr. Wingate's Global Assessment of Functioning score is consistent with the entirety of her opinion report, and it should be reconsidered along with the remainder of the opinion, on remand.

Because the ALJ discounted Plaintiff's own testimony (and by logical extension, the statements written by Plaintiff's mother) in part due to conflicts with the medical record, and the Court has found error in the ALJ's assessment of parts of the medical opinion record, the ALJ must reconsider Plaintiff's testimony and the lay statements on remand. To the extent that this reconsideration impacts the ALJ's RFC assessment, the ALJ should also reconsider the subsequent

findings at steps four and five.

## **CONCLUSION**

For the reasons set forth above, this matter is REVERSED and REMANDED for further administrative proceedings.

DATED this 15th day of June, 2018.

Mary Alice Theiler
United States Magistrate Judge